UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mustapha Kleit and Sophia Aljbaili,

    Plaintiffs,

v.                                          Case No. 05-74609

CSM Lodging Services, Incorporated,      Honorable Sean F. Cox
a Minnesota corporation,

    Defendant.
_____/

## OPINION & ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Following an incident in which Plaintiff Mustapha Kleit ("Kleit") claims that he was injured by a falling closet door in Defendant's hotel, he filed this action asserting a negligence claim. His wife Sophia Aljbaili ("Aljbaili") asserts a derivitive claim for loss of consortium.[1] The action is currently before the Court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the motion shall be DENIED.

## BACKGROUND

Kleit and Aljbaili filed suit against Defendant CSM Corporation ("CSM") on October 28, 2005, in state court, alleging: Negligence (Count I); Nuisance (Count II) and "Loss of Consortium" (Count III). Counts I and II are brought by Kleit alone, while his wife Aljbaili asserts Count III. During the pendency of this motion, however, the parties stipulated that the

---

[1]"A claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury." *Berryman v. K Mart Corp.*, 193 Mich.App. 88, 94 (1992).

1

nuisance claim should be dismissed. Thus, only the negligence and loss of consortium claims remain in this action.

Plaintiffs' claims center on an incident that occurred on August 7, 2005. At that time, Kleit and Aljbaili were staying at a hotel owned and operated by CSM ("the Hotel") as a result of a fire in their home. (Kleit Dep. at 22-24). Kleit's sister and his mother, Assma Kleit, who had been visiting from Lebanon at the time of the fire, also stayed at the Hotel. (*Id*. at 23-24). Kleit and his wife stayed in one room while his mother and sister stayed in a separate room at the Hotel ("Room 333"). (*Id.*).

On August 7, 2005, Kleit and his wife went to Room 333 after dinner. (Compl. at 6). Kleit testified that he entered the room using a key and as he walked in his wife was behind him. (Kleit Dep. at 45).

Kleit testified that once inside the room, he bent down to pick up a hanger on the floor. (Kleit Dep. at 58-59). He states that the closet door fell on him while in a crouching position picking up the hanger. He states that as the door was falling he saw it out of the corner of his eye and his mother yelled. (*Id*. at 63). He then defensively put his hands on his head to protect himself and the door hit his hands and his head. (*Id*. at 63-67).

Standard of Decision

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

ANALYSIS

I.  Negligence Claim:

The parties agree that, under Michigan law, possessors of land have a duty to exercise reasonable care for the protection of invitees such as Plaintiffs, but they are not insurers of their invitees' safety. (Pl.'s Br. at 10; Def.'s Br. at 5)(citing *Bryant v. Brannen*, 180 Mich.App. 87 (1989)). The possessor has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. *James v. Albert*, 464 Mich. 12, 20 (2001).

A.  Notice

The parties agree that here, in order to survive summary judgment, Plaintiffs must produce some evidence that CSM caused the alleged dangerous condition, knew of the alleged condition, or should have known of it. (Pls.' Br. at 10; Def.'s Br. at 5)(Citing *Ritter v. Meijer*, 128 Mich.App. 783 (1983)).

CSM contends that it is entitled to summary judgment with respect to Kleit's negligence claim because he cannot produce any evidence to establish that CSM caused, or had either actual or constructive notice of, the allegedly defective closet door.

In response to Defendant's motion, Plaintiffs assert that, contrary to the cases cited by CSM, there is considerable evidence to establish actual or constructive notice. Plaintiffs rely on: 1) the deposition testimony of Margerie Harris ("Harris"), a housekeeper at the Hotel; 2) an affidavit from Assma Kleit, who has returned from Lebanon; and 3) additional affidavits from Plaintiffs.

3

After Plaintiffs filed their response brief attaching those affidavits, Defense Counsel challenged two of the affidavits on several grounds. Plaintiffs' counsel then filed a motion seeking to strike two of the affidavits [Docket Entry No. 32. As explained below, however, the Court's ruling on this matter is not based on the challenged affidavits.

The Court concludes that, even without consideration of the challenged affidavits, Plaintiffs have presented sufficient evidence to establish a genuine issue of fact as to whether CSM had either actual or constructive notice of the defective condition of the closet door.

Harris testified that she was assigned to the third floor of the Hotel for either a few weeks or a few months prior to the August 2005 incident. (Harris Dep. at 5 & 31). Harris testified as follows at her deposition:

> Q. Okay. And have you on occasion, prior to or before August, 2005 when this incident occurred, prepared a Work Order to have the closet doors repaired?
>
> A. You know what, I repair one, but I can't tell you what date it was on, because one day I opened it, it was like bent, so I worked – made out the Work Order for Brian, so I don't know what exactly day it was on.
>
> Q. That wasn't on this particular door, was it?
>
> A. Yeah.
>
> Q. Oh, it was?
>
> A. But I don't know what day – what day it was.
>
> Q. Well, that's okay. Hold that thought.
> When the door came out of the – came off the track on August 7th, 2005, did you prepare a Work Order for that?
>
> MR. HIGGINS: Objection, form.
>
> THE WITNESS: Not on that day, not no – not on that – August, whatever

4

> you're saying.
>
> Q. (Continuing by Mr. Sunisloe) Okay.
>
> A. This was way before that even happened.
>
> Q. Okay. Way before that, okay. That's what I was wondering. When you prepared that Work Order it was on this particular door?
>
> A. It was on that particular door.
>
> Q. Room 333?
>
> A. Right.
>
> Q. How is it that you recall this particular door?
>
> A. That's my section.
>
> Q. I understand. And it's just that you know that you had a problem with this door before this incident?
>
> A. Right.
>
> Q. What kind of problem did you have with it before this incident?
>
> A. It wasn't a problem, I just noticed that it was bent.
>
> Q. Okay. What was bent?
>
> A. Huh?
>
> Q. What was bent, the track?
>
> A. The track.

(Harris Dep. at 22-24). At various other points during her deposition Harris again confirmed that she prepared a work order for the closet door in Room 333. For example, she testified as follows:

> Q. So before the incident in August, 2005, you observed the track in room 333, the closet door track to be similar to what is depicted in Exhibit Number 6, correct?
>
> MR. HIGGINS: Objection, form and foundation.
>
> Q. (Continuing by Mr. Sunisloe) Is that correct?
>
> A. Yes, it looks a little like this.
>
> Q. And do you know how – how long prior or before the incident you made this observation?
>
> A. No.
>
> Q. Pardon?
>
> A. No, I don't.
>
> Q. Now –
>
> A. I don't know the date.
>
> Q. I understand. But you would have prepared a Work Order?
>
> A. I did, yes.
> . . . .
> A. I wrote up a Work Order.

(Harris Dep. at 26-27 & 33). Harris further testified that when she wrote up the work order for the door its pin was "out of the track" and that the door was still up but was unstable. (*Id*. at 35-37).

Thus, contrary to the cases CSM relies on where there was no evidence regarding notice, the Court concludes that sufficient evidence has been produced to create a genuine issue of material fact.

The Court notes that in its Reply Brief, CSM states that Harris "recanted" her testimony

about having written up a work order for Room 333 prior to the incident. A fair reading of the transcript, however, reflects only that upon examination by defense counsel she stated that it was possible that she filled out the work order after the incident and that she agreed that Mr. Henderson or Mr. Berra would be in a better position to know about work orders. CSM has provided no authority to support its position that the testimony of Harris "must be disregarded." It is for the jury to decide the weight to be given to her testimony, and to that of the other witnesses. On a motion for summary judgment, however, the evidence must be viewed in the light most favorable to Plaintiffs, the non-moving party. When viewed in that light, there is sufficient evidence to create a genuine issue of material fact.

    B.    <u>Injury Was Self-Inflicted:</u>

Next, CSM asserts that summary judgment is warranted because it "did not have a duty to prevent an injury that the evidence establishes was self-inflicted by Plaintiff." (Def.'s Br. at I). CSM asserts that Kleit's version of the facts is unbelievable in that he claims that the door was to his left when it fell on him yet he used his right hand to stop the impact. CSM also relies on an affidavit from Dr. Jeffrey Fishman, who performed an independent medical examination of Kleit. In his affidavit, Dr. Fishman states that "[t]he fracture of the distal right fifth metacarpal sustained by Mr. Kleit is not consistent with the mechanism of injury described by Mr. Kleit. Rather, this type of fracture is commonly known as 'boxer's fracture,' because it results from striking a hard object with a clenched fist." (Ex. D to Def.'s Statement of Material Facts Not in Dispute). The only authority that CSM relies on to support this ground for summary judgment is *Rybarczyk v. New York Cent R. Co.*, 276 Mich. 131 (1936), an ancient case that is not analogous to the case at bar.

7

Plaintiffs respond by asserting that Kleit's injury is not inconsistent with physics in that the same kind of injury could occur regardless of whether the fist was traveling through space to hit a nonmoving door or whether the door was also moving and hit a fist. Plaintiffs cite their own authority on physics, and also submit medical references obtained from the internet that state that a "boxer's fracture" has other causes.

The Court agrees that this ground for summary judgment is without merit. Plaintiffs have presented the testimony of Kleit as to how his injury occurred. On a motion for summary judgment, where the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party, Dr. Fishman's mere opinion that Kleit's version of the facts is inconsistent with his physical injuries does not warrant summary judgment. Kleit's own testimony as to how his injury occurred is enough to raise a genuine issue of material fact as to how his injury occurred. Summary judgment on this ground shall therefore be denied.

## CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion seeking to strike the challenged affidavits from the record [Docket entry No. 32] is hereby **DENIED.**

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 18, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 18, 2007, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager